159      27
92a  ⁴357

# SHERIDAN et al. v. NATION, Plaintiff in Error.

## Division One, December 11, 1900.

1. **Deed of Trust: REDEMPTION: NOTICE.** Where plaintiffs base their right to redeem after a sale to the beneficiary under a deed of trust, on a verbal contract with the holder of the note to extend the time of its payment beyond the date of the sale, it is not necessary that notice to redeem be given under sections 7079 and 7080, Revised Statutes 1889. Said verbal agreement being admitted, the only question is, was it void under the statute of frauds?

2. ————: **VERBAL AGREEMENT TO EXTEND: REDEMPTION: FRAUD: STATUTES OF FRAUDS.** Defendant led the mortgagors to believe that he would not sell under his deed of trust without giving them personal notice of the time of sale, and in no event would he sell prior to a certain time, both of which stipulations he violated, and became the purchaser of the bond for one-fifth of its value. Had he given notice or had the mortgagors known of the sale before it was made, they could have provided for the payment of the debt. *Held,* that the defendant's conduct amounted to such a fraud upon the mortgagors as to authorize a court of equity to decree the cancellation of the deed of trust upon the payment of the amount due when the sale was made. And the beneficiary defendant will not be permitted to invoke the statute of frauds as a shield for his wrongful conduct in violating his agreement.

3. ————: ————: **INTENTION TO DEFRAUD.** In such case it is not necessary to find that the defendant deliberately intended to cheat the mortgagors out of their property. It is enough if his acts, regardless of intention, were, under the circumstances, a fraud upon their rights which they had no reason to anticipate.

4. **Equity: STRIKING OUT EVIDENCE.** In equity cases the appellate court does not pass upon rulings as to the admission or rejection of evidence. The trial court may strike out all the evidence, but if it is contained in the record the appellate court will consider what is competent, and arrive at its own conclusions.

Sheridan v. Nation.

5. **Parties:** REAL NAME. The statute requires the suit to be brought in the name of the real party in interest, and this does not mean that it is the name which the court or church or marriage records may show to be the real name of the plaintiff, but a person may do business and execute contracts in any name he or she may choose to assume, and has a perfect right to sue and be sued in such name. The statute does not say "in the real name of the party," but "in the name of the real party in interest."

6. ———: WAIVED. Where an alleged defect of parties plaintiff in no wise affects the merits of the controversy, and no objection is made in the trial court, by answer or otherwise, to the name in which plaintiff brings suit, the objection will, on appeal, be deemed waived.

7. ———: LOAN OBTAINED BY FRAUD: NAME OF GRANTORS: OTHER HEIRS. The mortgagors were described in the deed of trust as the widow and only surviving heirs of Patrick Sheridan, deceased. The facts were that the "widow" had, subsequently to Sheridan's death, married one Ferry, and been divorced from him, and assumed her former name of Sheridan. This fact was unknown to defendant at the time the deed of trust was made. It was a fact also that she then had another son living outside the State, and this fact was made known to defendant's lawyer who drew the deed. *Held*, it being manifest that there was no intentional concealment of facts, and no concealment of any material fact, and no such concealment in any matter as led the mortgagee into an error injurious to himself, it will not be held that the said "widow and sole surviving heirs" were guilty of such fraud and deceit as bars them to maintain, in a court of equity, a suit to set aside a sale under the deed of trust on the ground that it was made in fraud of the mortgagors' rights.

Error to St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

*John R. Christian* for plaintiff in error.

(1) The contract set up in the petition as the basis of relief, being a contract modifying, changing and varying the contract of the deed of trust with its power of sale, is

Sheridan v. Nation.

itself a contract for the sale of lands, tenements and heredit-
aments, or of an interest in or concerning them, and as such
the statute of frauds required that it or some memorandum
or note thereof should be in writing and signed by appellant
or some person authorized by him, to make him liable to be
charged upon the same. R. S. 1889, sec. 5186; R. S. 1899,
sec. 3418. (2) No notice of intention to give bond and
redeem given on the day of sale is pleaded in the petition,
and the petition is therefore insufficient to state a cause of
action under the statute on this ground. Vanmeter v. Dar-
rah, 115 Mo. 157; R. S. 1889, secs. 7079 and 7080, now
secs. 4343 and 4344, R. S. 1899. (3) The modifying
contract set up in the petition as the basis of relief was not.
admissible in evidence over the objection of appellant that it
was not in writing, there being no allegation in the petition
that it or a memorandum or note thereof was in writing nor
any facts alleged which in a court of equity are deemed
equivalent thereto. R. S. 1889, sec. 5186. (4) There
being no evidence tending to prove the modifying contract
relied on for relief, it having all been stricken out, and the
notice of intention to redeem required not having been
proved, there is no evidence to support the decree in any
view. (5) Conversations tending to prove modifications,
changes and alterations of the original contract, made at
other times and prior to the modifying contract set out in
the petition as basis of relief, not pleaded, are not admis-
sible in evidence over objection, nor can they be used, when
not pleaded, to prove the modifying contract pleaded and
relied upon. (6) When the original contract is tainted
with deceit or fraud it taints the whole transaction, and a
court of equity will not aid a party seeking to enforce a
modification of a contract so tainted; he is in court with un-
clean hands and can not have a decree. (7) The statute

of Missouri requires the suit to be brought in the name of the real party in interest. In the case of the respondent suing as Elizabeth Sheridan this was not done.

*Seneca N. Taylor, Chas. Erd* and *S. C. Taylor* for defendants in error.

(1) Equity will redress fraud in every shape it may appear, and any misrepresentation amounting in the eye of the chancellor to fraud, or any unfair advantage in violation of an agreement to extend payment of a deed of trust will induce the court to act. Bispham's Equity Principles (3 Ed.), secs. 206, 211, 213, 217, 218 and 258; Orr v. McKee, 134 Mo. 78; Vanmeter v. Darrah, 115 Mo. 157; Barr v. Baker, 9 Mo. 850; Kehoe v. Taylor, 31 Mo. App. 588. (2) Equity, without regard to the statute in question, can and ought to set aside this sale. The defendant is not an innocent purchaser. On the contrary, he procured the sale to be made in violation of a binding agreement and in fraud of plaintiffs, the owners. Cassidy v. Wallace, 102 Mo. 575; Whelin v. Reiley, 61 Mo. 565; Stoffel v. Schroeder, 62 Mo. 149; Turner v. Turner, 44 Mo. 535; Thornton v. Irwin, 43 Mo. 153; Rutherford v. Williams, 42 Mo. 18; Clarkson v. Creely, 35 Mo. 95. (3) Where a party by his promise to buy or hold real estate for the benefit of another has induced action, or forbearance by reliance upon such promise, it would be fraud if the promise is not enforced, and chancery will enforce the same through the machinery of a trust. Leahy v. Witte, 123 Mo. 207; Medsker v. Swaney, 45 Mo. 273; Slowey v. McMurray, 27 Mo. 118; Rose v. Bates, 12 Mo. 30. (4) Where the holder of the deed of trust lulls the owner into security by promising not to enforce the deed without notifying him, a court of equity will set aside the

sale and grant the owner permission to redeem. In such a case the statute of frauds has no application. Clarkson v. Creely, 35 Mo. 95; Clarkson v. Creely, 40 Mo. 114; Rutherford v. Williams, 42 Mo. 33. (5) The agreement of defendant with plaintiffs to extend the time of the payment of the amount due from some time in March, until May 15, 1896, in consideration that plaintiffs should pay eight per cent interest upon past due interest notes and for money defendant had advanced·for taxes, was a binding contract. The deed of trust sale defendant caused to be made May 4, 1896, in violation of said contract, constituted a fraud which a court of chancery will not permit to stand. Nor can the statute of frauds be invoked as a shield to the defendant. Clarkson v. Creely, 35 Mo. 95; Clarkson v. Creely, 40 Mo. 114; Rutherford v. Williams, 42 Mo. 33; Glasscock v. Glasscock, 66 Mo. 627; Childs v. Wallace, 83 Mo. 89; Light Co. v. St. Louis, 84 Mo. 202; Gunn v. Head, 21 Mo. 433; Baldridge v. Dawson, 39 Mo. App. 527; Light Co. v. City St. Louis, 11 Mo. App. 78; Canal Co. v. Ray, 101 U. S. 522; Brown on Oral Ev., pp. 202-3; Baxter v. Spencer, 33 Mich. 325; Longfellow v. Moore, 120 Ill. 287. (6) One may assume any name he pleases and change it *ad libitum*. The law looks only to his identity. 16 Am. and Eng. Ency. Law (1 Ed.), p. 118; Watson v. Watson, 49 Mich. 540; Rex v. Billingshurst, 3 M. and S. 250; Jonesbury v. Goodenough, 44 Vt. 662; Clark v. Clark, 19 Kan. 522; Rich v. Boyce, 39 Md. 314; Bell v. Son, 42 N. Y. Supp. 540; Lincoln v. Bank, 10 Fed. 895.

ROBINSON, J.—This is a proceeding in equity to set aside a trustee's sale of certain real estate situate in St. Louis, and to permit plaintiffs to redeem, commenced in the circuit court of the city of St. Louis by the surviving heirs of Patrick Sheridan, deceased.

The petition states in substance that on October 5, 1888, the plaintiffs obtained a loan of money from the defendant and secured the same by a principal note for $350, payable three years after date, and six semiannual interest notes, each for the sum of $14, payable respectively in 6, 12, 18, 24, 30 and 36 months after date, together with a deed of trust on the premises in controversy, of the value, as alleged, of $2,500, containing the usual power of sale on failure to make such payments; that in March, 1896, after the interest notes had all been paid and while the principal alone remained due, and the real estate in question liable to be advertised and sold under the power of sale contained in the deed of trust, defendant had an interview with the plaintiffs, informing them that he did not desire immediate payment of the principal, but was perfectly willing that the same should remain unpaid, provided plaintiffs would pay him interest at the rate of eight per cent per annum, and that if on any occasion interest was in arrears, he would be satisfied that it should remain so, provided plaintiff would pay compound interest thereon; that he would not take advantage of plaintiffs, and would not cause the property to be sold under the deed of trust without first giving them personal notice of his intention so to do, in order that they might renew the loan; that plaintiffs trusted and relied upon his promises and made no further effort to raise the money to pay the loan; that they could easily have obtained the money elsewhere to have retired the loan and obtained a new one, had they not been misled by defendant's statements and conduct; that on April 10, 1896, without notifying plaintiffs, and without their having any information or knowledge thereof, defendant caused his brother George W. Nation, the trustee named in the deed of trust, to advertise and sell the property in controversy, and afterwards, on May 4, 1896,

Sheridan v. Nation.

became the purchaser himself, for the grossly inadequate price and sum of $550, of property which was well worth $2,500; that plaintiffs had no notice or information that the property had been or would be advertised or sold; that plaintiffs first learned of said sale on May 11, 1896; and that on the following morning thereafter the plaintiff Elizabeth Sheridan called upon defendant to ascertain whether the rumor touching the sale was correct, and on being informed that it was so by the defendant, and that he had become the purchaser thereof, she then and there offered to redeem the property from defendant, raise the money and pay him the full amount of principal and interest due thereon, together with all legal charges and costs of the trustee's sale.   That at the time of the trustee's sale there was due defendant, the full amount of the principal sum named in the note, a small amount due as interest, and the amount advanced by defendant to pay the taxes against the property, all of which the plaintiffs were ready and willing to pay as soon as they could ascertain the true amount; that defendant refused to state the amount which he claimed was due, saying that he would not accept the same if tendered him.   The petition further alleges that upon May 16, 1896, plaintiffs filed with the circuit clerk a bond in the sum of $500 with approved securities for the payment of the interest which may accrue on the mortgage indebtedness after the sale, and for all damages and waste that may be occasioned or permitted by plaintiffs; that immediately after the sale, defendant received a trustee's deed of the property, took possession of the premises, and has ever since been collecting the rents thereof; that the plaintiffs are not advised of the amount of rent collected by defendant since he took possession or of the amount of the legal charges and costs of the sale by the trustee, but aver

their willingness to pay the same into court when ascertained. The prayer of the petition is that an accounting may be taken between plaintiffs and defendant; and that plaintiffs may be permitted to redeem, and that the deed from the trustee to defendant be cancelled, and that defendant be required to reconvey to plaintiffs, and that they be restored to the possession of the premises.

The answer denied generally the allegations of the petition, and set up the statute of frauds as to the agreement alleged to have been made between plaintiffs and defendant in March, 1896, to extend the time of payment until May 15, 1896, in consideration that plaintiffs should pay compound interest.

The circuit court found for the plaintiffs, and ordered a reference to ascertain the amount due defendant, and necessary to redeem. Upon the filing of the referee's report, and a stipulation of the parties showing $435.93 due to defendant at the time of the trustee's sale and necessary to redeem, the court ordered a final decree in favor of plaintiffs, setting aside the trustee's deed and divesting defendant of title to the premises, and vested same in plaintiffs, and awarded to plaintiffs the possession thereof. Defendant's motion for new trial and in arrest being overruled, he brings the case here for review on appeal.

Defendant's first contention is, as there is no averment in the petition, that notice to redeem was given on the day of sale of the land by the trustee, nor any testimony introduced tending to show that plaintiffs ever contemplated giving such notice, either on the days of sale or at any time thereafter; that plaintiffs for this reason have no standing in court under the statute, as contemplated by sections 7079 and 7080, Revised Statutes 1889.

We can not appreciate the force of this contention.

The right to redeem under the provisions of sections 7079 and 7080, *supra*, of the statute, where property has been summarily sold under a deed of trust and bought in by the beneficiary, does not depend upon the fact of the existence of a notice to redeem given on the day of sale or upon any other day. The cases of this court cited and relied upon as authority by appellant, wherein it is said that if notice is not given by the grantor of his intention to redeem on the day of sale under the deed of trust, the trustee may be required to deliver his deed to the purchaser, have no application to the condition of this case, and do not involve the question of the right of redemption. The right of the grantor in a deed of trust, to redeem from a trustee's sale, and the right and duty of the trustee after sale to deliver his deed to the purchaser, are entirely independent one of the other. The purchaser at a trustee's sale might be able to compel the delivery to him of a deed to the property, that a court afterwards would set aside and cancel for wrongs and frauds connected with the sale of which the trustee might be wholly ignorant. The notice of the intention to redeem by the grantor on the day of sale, has only the effect to arrest the delivery of the deed to the purchaser until the statutory bond may be filed by the grantor, but the fact of the delivery or non-delivery of the deed by the trustee, has no influence upon the question of the right to redeem by the grantor under circumstances such as have been disclosed in this proceeding.

The grantor's right to avail himself of the benefit of the provisions of sections 7079 and 7080, to redeem from a trustee's sale, does not depend upon a notice of his intention to redeem given to the trustee on the day of sale, but upon his filing with the circuit court of his county, or, if the court is not in session, with the clerk thereof, a satisfactory bond,

with approved securities, within a reasonable time after the sale, and that must of necessity depend upon the facts of each particular case, for the payment of the interest to accrue after the sale upon his obligation and for all damages and waste that may be occasioned or permitted by him to the property sold. This plaintiffs have done, and while their action herein is not predicated upon the statute, they have recited a compliance, on their part, with the requirements thereof along with the other facts entitling them to equitable relief, and have prayed for a decree accordingly. This brings us, then, to the consideration of the main contention in the case, which, broadly stated by appellant, is that under the pleadings and evidence plaintiffs are not entitled to the relief sought, even on equitable principles.

In other words, that the contract between plaintiffs and defendant to extend the time of paying the mortgage indebtedness, from some time in March until May 15, 1896, and not to sell under the deed of trust before that time without giving notice of his intention to do so, set up in the petition as ground upon which plaintiffs predicate their right to redeem on equitable principles, not being in writing and signed by defendant, is void under the statute of frauds and therefore not availing as the basis of relief in a court of equity.

Although appellant's most vigorous assertion of his position, our attention has not been called to any authority in support thereof, and the facts disclosed by the record do not justify the position taken. The evidence clearly shows that about the middle of March, 1896, the defendant called upon the plaintiff Elizabeth Sheridan and in the course of a conversation in relation to the indebtedness which was then past due agreed that he would extend the time of payment, until the middle of May following, in consideration that

plaintiffs should pay him compound interest on the loan and reimburse defendant for any money advanced by him in payment of back taxes on the premises, the defendant at the same time assuring the plaintiff Elizabeth Sheridan, that he would not take any advantage of her or sell the property under the deed of trust without giving to her and the other parties in interest notice thereof, thereby inducing plaintiffs to believe that they would not be called upon to pay either the principal or interest upon their indebtedness before the middle of May; that plaintiffs could readily have obtained the money elsewhere to take up or retire defendant's loan, or have obtained another one, but relying on defendant's statements and agreements, made no effort to do so; that in violation of such agreement, defendant, without notice to plaintiffs, caused the trustee to advertise and sell the premises, and at such sale, became the purchaser of property worth at least $2,500 for $550, one-fifth its actual value, and when applied to by plaintiffs to redeem declined to permit them to do so.

The evidence further shows that plaintiffs first learned of the sale on the evening of May 11th when the plaintiff Elizabeth Sheridan went to collect the rents from her tenants in possession of the premises; that on the following morning she called on defendant to ascertain the correctness of the rumor touching the sale and was informed that the property had been sold by the trustee and purchased by him; whereupon she offered to redeem and pay him the full amount due on the note with compound interest, together with the amount advanced on account of taxes and the costs of the trustee's sale, which defendant refused to accept, insisting that he then owned the property and proposed to hold it. The next day she went to see a lawyer relative to the action necessary to protect her rights. The counsel consulted by her was at

that time engaged in court in the trial of a case, and was unable to take the matter up until May 16th, when the bond to redeem was prepared, signed and filed with the circuit court as required by the statute, and shortly afterwards began this proceeding to have the trustee's deed cancelled, the title to the property divested out of defendant and invested in the plaintiffs, etc.

Without further detailing the facts shown, it will suffice to say, that defendant agreed with plaintiffs that he would extend the time for the payment of the indebtedness secured by the deed of trust until the middle of May, 1896, and that plaintiffs were led to believe that defendant would not cause their property to be advertised for sale under the deed of trust before that time without notice to them of his intention so to do; but in violation of such agreement and understanding he did order the trustee to advertise and sell, and at such sale, on May the 4th, bid the property in at a grossly inadequate price, and that the plaintiffs were totally ignorant of the sale until May 11th, when it was ascertained as above indicated.

While it may be said that defendant was under no legal obligation to notify plaintiffs of his intention to sell the property under the deed of trust, yet, having led them to believe he would not cause the property to be sold without giving them personal notice before selling the same, and further leading them to believe that in no event would it be sold before the middle of May, his proceeding to sell, without notice to plaintiffs, and that, too, before the middle of May, operated as a fraud upon plaintiffs, which authorizes the intervention of the court of equity in their behalf.

It is evident that plaintiffs were acting under the belief that no proceedings would be taken to enforce the deed of trust before the middle of May without notice to them, and

Sheridan v. Nation.

therefore they did not look for an advertisement of the sale in the newspapers, not giving themselves any further concern about the matter, but relied implicitly upon this understanding, nothing occurring in the meantime to lead them to anticipate a sale under the deed of trust, contrary to the agreement. While it is not necessary to find that defendant deliberately intended to swindle the plaintiffs out of their property, still it is apparent that his acts and conduct, regardless of his intention, were a fraud upon them, which under the circumstances, they had no reason to anticipate.

In Orr v. McKee, 134 Mo. 78, a suit in equity to set aside a sale made under power contained in a mortgage, the evidence showed that Orr held the first note secured by the mortgage and Mrs. Heath the other, and that after the notes became due Mrs. Heath's agent had an interview with Orr, in which he asked Orr to join in a foreclosure, but which Orr did not then decide to do, the agent, however, at that time promising to see Orr again before he would have the property advertised for sale, but failed to do so, and the property was sold without notice to Orr. BURGESS, J., speaking for the court in that case, said: "Mrs. Heath was under no legal obligation to notify Orr personally of her intention to sell, or to consult him in respect to her intention to advertise the property for sale under the deed of trust, but when her agent, Bagley, chose to do so, and promised Orr to see him again after their conversation in which Orr said Bagley asked him to join in a foreclosure, before advertising the property for sale, his failure to do so was a fraud upon Orr." The judgment of the circuit court permitting Orr to redeem, was accordingly affirmed. To the same effect, is Cassady v. Wallace, 102 Mo. 575.

So in Rutherford v. Williams, 42 Mo. 18, where the agreement between the mortgagor and mortgagee was that

the latter would not direct a sale under the mortgage within a certain time, but in violation of the agreement and understanding, he directed a sale and became the purchaser of the property, the court said: "So far as there is any evidence here of fraud or deception, it concerns the alleged promise not to sell. . . . . The circumstances, the expressions used, and the conduct of the parties, were such that the jury might reasonably infer, perhaps, that there was in fact such an understanding, which had the effect to mislead the plaintiff. . . . . . . . : The bad faith of the defendant consists in his directing the trustee to proceed in the exercise of his power to sell, when he had agreed, or led the other to believe, that he would not call the power into requisition in his absence. The injury done to the plaintiff consisted in his having been fraudulently induced to go away, whereby he was the less able to attend to his business at home, and suffered loss therein; and it may be said that by means of this fraud and deception, the defendant acquired the legal title to the property for a trifling sum, when the plaintiff, if he had been present, might have protected his property from so great a sacrifice."

The case of Clarkson et al. v. Creely et al., 40 Mo. 114, in its essential features is not distinguishable from the present case. There the agent of the grantor in the deed of trust called upon the beneficiary and informed him that she would be ready to pay the mortgage indebtedness whenever it became necessary to proceed under the power of sale, whereupon the beneficiary agreed not to enforce the deed of trust without notice to the grantor of his intention to cause the property to be sold. It was held on full consideration that the beneficiary's proceeding to enforce the deed of trust without notice to the grantor of his intention to do so, was such a fraud upon her rights as to authorize the court of

equity to permit her to redeem the land. Applying the principles of that case to this, it results that plaintiffs are entitled to the relief granted in the circuit court regardless of the statute. The defendant being the purchaser at the trustee's sale, made at his own request, will not be permitted to invoke the statute of frauds as a protection for his wrongful conduct in violating his agreement to extend the time of payment of the mortgage indebtedness and not enforce the deed of trust before the middle of May without notice to plaintiffs of his intention to do so.

It would be singular, indeed, if a court of equity could suffer the defendant to acquire plaintiff's property at one-fifth of its actual value at the trustee's sale, brought about in violation of his positive agreement to extend the time of payment of the indebtedness secured by the deed of trust, and his bad faith in causing the trustee to advertise and sell under the power of that instrument, when he had actually induced plaintiffs to believe that he would not sell without notice to them. Such being the case, it is our plain duty to affirm the judgment of the circuit court herein.

But defendant now insists that as all the evidence tending to prove the agreement for the extension of time of the payment of the indebtedness secured by the deed of trust was stricken out by the trial court, no testimony was left to support the judgment. The record before us discloses no such action of the trial court, and counsel for plaintiffs insists that such is not the fact. Be that as it may, it suffices to say that this being an equitable proceeding, the evidence is reviewable by us as upon its first hearing. In equitable proceedings we do not have to pass upon rulings as to the admission or rejection of evidence. When all the evidence is contained in the record, we can consider what is competent, and exclude what is incompetent, and then arrive at a conclusion from

our own analysis of the evidence regardless of the ruling of the trial court; therefore no further notice will be taken of this point.

It is next contended that this suit, so far as concerns the plaintiff Elizabeth Sheridan, is not brought in the name of the real party in interest. While it is admitted by defendant that a person can do business in any name he or she may choose, he urges that when such party institutes a 'suit, it must be brought in his or her real name, with proper averments of identification, showing that he or she is entitled to relief on account of the transactions involved, although they may have been known in the community in which he or she resides by the name in which the business was done or the contract made. Such is not our understanding of the law, and counsel have not furnished us with any authority supporting his contention. The deed of trust in controversy was executed in the name of Elizabeth Sheridan. At that time, however, her present husband, Ferry, from whom she had been separated for several years, was living, but she had assumed and went by the name of her former husband, Sheridan, since her separation from Ferry, and was generally known and called in the neighborhood in which she resided by such name, and no other, and so continued to be known and called up to and at the time of the institution and trial of this suit.

The statute requiring actions to be brought in the name of the real party in interest, is no prohibition against suits being brought in a name other than that by which one has been christened and has received from his or her parents, or that of the husband, where the party suing is a married woman. It was the real party in interest as he or she is known in the business world, and in courts where business differences are adjusted and settled, that the authors of the

statute had in mind, when section 540, Revised Statutes 1899, was enacted, with little thought of the question as to the particular name by which the litigant might have been designated in the birth records of the family or the marriage record of the church or county. It is the individual identified that the law desires, not a record appellation, by which one was known in former years, established. It is entirely settled, both by the elementary writers and adjudicated cases, that in the absence of fraud, a person may do business and execute contracts in any name he or she has chosen to assume and has a perfect right to sue and be sued in such name. Thus in the case of Clark v. Clark, 19 Kansas 522, cited by respondent, which was an action brought in the name of Sarah J. Clark against Thomas J. Clark for money had and received, the facts in the case were made to show that the plaintiff's real name was Sarah J. Brown; that she deserted her husband in Indiana and eloped with the defendant Thomas J. Clark and took up her residence with him in the State of Kansas, assumed his name and became known in that State as Sarah J. Clark, and that while she was known and called by the name of Clark brought an action against the defendant under her assumed name. In speaking of the case the court said: "The real party in interest brought the action; and the record sufficiently identifies such party so far as her name is concerned as to disclose a complete bar to a similar action between the same parties. She was known only in Kansas by the name of Sarah J. Clark . . . . . . . She was so called when the plaintiff in error obtained the money, and had no other name in the community in which she lived." To the same effect is Watson v. Watson, 49 Mich. 540; Johnsbury v. Goodenough, 44 Vt. 662, and Rex v. Billingshurst, 3 M. & S. 250.

In our opinion, under the pleadings and evidence of this

case, it should not be said that this suit was not commenced in the name of the real party in interest. The plaintiff Elizabeth Sheridan is identified sufficiently to bar another suit between the same parties.

Moreover, this alleged defect of parties plaintiffs, in nowise affects the merits, and no objection having been made in the court below by answer or otherwise, it must, we think, for that reason be deemed waived, and can not therefore be urged as a ground of reversal when the case has reached this court.

Finally, it is urged by counsel for appellant that plaintiffs have no standing in court to redeem either on equitable or statutory grounds for the reason that the loan was obtained by fraud and deceit in this, that it appears from the deed of trust, that "Elizabeth Sheridan is the widow and the plaintiffs Katherine and Patrick Sheridan, the only surviving heirs of Patrick Sheridan, deceased," and no mention was made of Mrs. Sheridan having another son or of her being a married woman at the time. While the deed of trust recites that Mrs. Sheridan was the widow, and that the plaintiffs Katherine and Patrick Sheridan, the sole surviving heirs of Patrick Sheridan deceased, yet the evidence further shows that plaintiffs had nothing to do with the preparation of the deed of trust and that the subject of the plaintiff Elizabeth Sheridan being a married woman was not referred to. The plaintiff Elizabeth Sheridan testified that she did tell the gentleman who prepared the papers that she had a son living in Washington City, and that he told her, that inasmuch as he did not live in the State, it was not necessary to mention his name in the deed of trust. That she supposed that the man the defendant had gotten to prepare the papers knew what was right, and that she signed it as it was written and prepared for her; that as she always went and was called by the name of Mrs. Sheridan, it never occurred to her to

mention the fact that she had a living husband by the name of
Ferry, from whom she had been separated for years.   Notwith-
standing the incorrect recitations of facts appearing in the
deed which was signed by plaintiffs, that there was no inten-
tional concealment of facts by any of the plaintiffs, is most
manifest from an examination of the entire record in the
case; and no fact, except that the plaintiff Elizabeth Sher-
idan had a living husband by the name of Ferry, at the time
the deed was signed, was in truth unknown to the defendant;
and on account of defendant's want of knowledge of that one
particular fact he was led into no error nor in anywise
injured.   This contention of defendant is without merit.
The judgment of the circuit court, being for the right party,
upon all the facts of the case, is affirmed.

   All concur.